# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Klint Neiman | ) | |
| 125 South 4th Ave. | ) | |
| West Reading, PA 19611 | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| Wyomissing Area School District | ) | |
| 630 Evans Ave. | ) | |
| Wyomissing, PA 19610 | ) | |
| | ) | |
| | ) | Jury Trial Demanded |
| and | ) | |
| | ) | |
| Robert Scoboria | ) | |
| Formerly in his capacity as | ) | |
| Superintendent of the | ) | |
| Wyomissing Area School District | ) | |
| 630 Evans Ave. | ) | |
| Wyomissing, PA 19610 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Robert Scoboria | ) | |
| Superintendent | ) | |
| Twin Valley School District | ) | |
| 4851 N. Twin Valley Road | ) | |
| Elverson, PA 19520 | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

Plaintiff, Klint Neiman is a disabled person who, by and through his attorneys, brings this Complaint alleging retaliation against Plaintiff in violation applicable federal and state discrimination laws and of his civil and constitutional rights to be free from Discrimination.

## PARTIES

1. Plaintiff, Klint Neiman, is the adult father of two children and resides at 125 S. 4th Ave., West Reading, PA 19611.  Plaintiff's spouse is Amanda Palmer.

2. Plaintiff as well as his wife have two children, Allison and Luke (hereinafter Children), who also reside at 125 S. 4th Ave., West Reading PA 19611.

3. Defendant, Wyomissing Area School District is located at 630 Evans Ave, Wyomissing, PA 19610.

4. Defendant,  Robert Scoboria was the Superintendent of the Wyomissing Area School District at the time the events described in this Complaint occurred, and he is sued for his actions in that capacity.  His then address was 630 Evans Ave., Wyomissing, PA 19610.  Defendant is now the current Superintendent of the Twin Valley School District, located at 4851 N. Twin Valley Road Elverson, PA 19520

5. All defendants acted under color of law.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of Plaintiff's federal law claims and pendent state pursuant to 28 U.S.C. §§1331 and 1343.

2

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the unlawful practices alleged herein occurred within the jurisdiction of this Court.

## PROCEDURAL BACKGROUND

8. Plaintiff filed a *pro se* complaint with the Pennsylvania Human Relations Commission (PHRC) on September 29, 2021.   Those charges were  assigned PHRC number 202100759.  A copy of the *pro se* charges is attached hereto as Exhibit "A".

9. On November 15, 2022, after obtaining undersigned counsel, Plaintiff filed Amended Charges of Discrimination with the PHRC.  A copy of the Amended Charges is attached hereto as Exhibit "B".  Plaintiff specifically requested that the Amended Charges be cross-filed with the United States, Equal Employment Opportunity Commission (EEOC).  Despite the request, his Amended Charges were never cross-filed by the PHRC.   Under the so-called work sharing agreement, cross filing is standard procedure.

10. After the charges were investigated by the PHRC, a letter finding of no probable cause was issued.    A copy of that letter is attached hereto as Exhibit "C".

11. On January 31, 2024, the PHRC wrote Mr. Neiman and his attorney a letter specifying that he has the right to pursue a legal action in the Common Pleas Court for a period of two years from the date of the letter, pursuant to 42 P.S. §962(c).  *See* Exhibit "C".

3

12. Plaintiff submits that the PHRC failed to consider the following facts and circumstances in considering and deciding his Charges of discrimination:

A.  Mr. Neiman never entered or went inside the school on August 9th 2021.

B.  The Wyomissing Hills Elementary Center's evaluated and denied Plaintiff' email Right to Know (RTK) request to obtain and view a copy of the video and audio of the underlying August 30th 2021 incident at his children's school. Upon information and belief, the information would have proven Mr. Neiman's case. *See* Right to Know Email, which Mr. Neiman has requested in a subsequent Right to Know Request, is attached hereto at Exhibit "D".  *See also* Neiman to WASD Superintendent Scoboria (via Mr.  Scoboria's administrative assistant Sheri Piveteau) email referring to video sought in his original Right to Know Request, which is attached hereto as Exhibit "E".

C.  On August 30th, 2021, Mr. Neiman entered the Wyomissing Hills Elementary Center by being buzzed in through 2 separate doors and was visible to school officials through the windows in the doors at all times.  Mr. Neiman was there to drop off and pickup paperwork for his children, NOT to see the children.  The children were at home at the time.

D.  On December 28, 2021, criminal charges were sought by WASD against Mr. Neiman, see Preliminary Arraignment Notice, and  Subpoena of Arraignment, which are attached hereto as Exhibits "E(1), (2) and (3)" and Police Criminal Complaint which is attached hereto as Exhibit "G(3)",  for taking his children to

4

a public playground 18 days after the Supreme Court of Pennsylvania ruled the

mask mandate was *void ab initio* is attached hereto as Exhibit "U".  Mr. Neiman

was tried and found not guilty.  See not guilty verdict which is attached hereto as

Exhibit "G(4)".

E.  The WASD Security Guard and Defendant Scoboria both admitted they knew of

Mr. Neiman's disability  AND testified that he was medically excused from

wearing any face covering in Court transcripts, which are attached hereto as

Exhibits "G(1) and (2)".  Both also testified that they had no knowledge as well

of applicable law.

F.  Before his trial Mr. Neiman's attorney hand delivered a letter to the school asking

that Mr. Neiman be allowed back on to WASD property.   *See* Letter, which is

attached hereto as Exhibit "G(5)".  WASD's attorney responded with regard to

Mr. Neiman's request to be on school property that he would discuss matters

"once your client's criminal court [case] is resolved."  *See* Email, which is

attached hereto as Exhibit "G(6)".

G.  In Mr. Neiman's attorney's letter to the school, he also notified it that the District

Attorney intended to drop all the criminal charges against Mr. Neiman.  *See*

Exhibit "G(5)".

H.  Court transcripts state that on the opening day of the trial (where an agreement to

drop charges was withdrawn) Assistant District Attorney, Nicole Ricco, informed

the Court that following a telephone call that morning from Robert Scoboria (the

5

superintendent), the District Attorney's office decided to continue to pursue said charges.  *See* Transcript, attached hereto as Exhibit "G(7)".

I.  After the trial, Mr. Neiman's attorney telephoned WASD attorney Jeffrey Litts informing him Mr. Neiman was found not guilty and Mr. Litts confirmed that conversation in an email, which is attached hereto as Exhibit "G(8)".

J.  In Mr. Litt's Email to Mr. Yarnell (Exhibit "G(9)") he also said that WASD would consider removing Mr. Neiman's trespass Order, if he would drop his PHRC case against WASD.  *See* Exhibit "G(8)".[1]

K.  On January 5th, 2023, Mr. Neiman again sent the School District a letter asking to be allowed on school property.  *See* WASD l of January 12, 2023, attached hereto as Exhibit "G(9)".

L.  On January 12, 2023, WASD wrote Mr. Neiman permitting him to be on school property.  *See* Letter, which is attached hereto as Exhibit "G(10)".

M. On February 13, 2023, at meeting of the WASD School Board, Mr. Neiman read to the Board a letter of his disputes and concerns.  The letter is attached hereto as Exhibit "G(11)".

---

[1] On January 1, 2023, Mr. Litt's law firm merged with a larger firm known as Saxton & Stump.

N. On July 7, 2023, the Board responded to Mr. Neiman stating it would not respond because the matter was before the PHRC. *See* July 7, 2023 letter attached hereto as Exhibit "G(12)".

O. On January 16, 2024, Mike Cafoncelli, Director of Facilities, Safety and Security of WASD wrote Mr. Neiman a letter stating WASD would no longer respond to any of Mr. Neiman's inquiries about employment -- "Moving forward, we will not be responding to your email and voicemail request for updates." *See* Letter, which is attached hereto as Exhibit "G(13)".

P. Plaintiff filed Charges of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) on April 25, 2024, after he applied to multiple positions at the Wyomissing Area School District for which he was qualified.   On each occasion he received no response despite making multiple follow up phone calls seeking one. *See* Charges of Discrimination attached hereto as Exhibit "G(14)".

Q. Plaintiff received a Right to Sue letter from the EEOC on May 8, 2024. *See* Right to Sue letter attached hereto as Exhibit "G(15)".   Based upon the Right to Sue letter, the time to file suit in this Court was on or before August 6, 2024.

R. Plaintiff received notice that the EEOC Right to Sue letter was withdrawn on June 21, 2024, and forwarded for processing of the Right to Sue Letter by the United States Department of Justice. *See* June 21, 2024 letter, attached hereto as Exhibit "G(16)".

S.  On July 11, 2024, Plaintiff's counsel contacted Unique Austin of the EEOC and
was informed that the Right to Sue letter in Mr. Neiman's case must be issued by
the Department of Justice.   Their conversation was memorialized in an email
sent to Unique Austin by Mr. Yarnell later the same day.  *See* Copy of email
attached hereto as Exhibit G(17).[2]

T.  Plaintiff no longer has a Right to Sue letter from the EEOC and received no
additional Right to Sue Letter from the Department of Justice.   Because of these
circumstances, Mr. Neiman is in a state of extreme anxiety and traumatized.
Accordingly, Plaintiff asks the Court to direct the Department of Justice to issue a
Right to Sue letter.   In the meantime, he files this suit consistent with the filing
date provided in the EEOC's original Right to Sue letter.

### BACKGROUND INFORAMTION

13. The Wyomissing Area School District ("WASD") is "a third class school district
composed of West Reading Borough and portions of Wyomissing Borough in Berks
County." *In RE: Petition to Reapportion the Wyomissing Area School District from
at Large to Three (3) Regions for the Election of School Directors Appeal of:
Valentin Rodriguez, Jr.,* No. 835 C.D. 2017, ____ A.3d ____ (Cmwlth. Ct. 2018).  *See*
24 P.S. § -6-677.

14. WASD is a public accommodation subject to the provisions of Section 3 of the

---

[2] .   In Exhibit "G(17)" is also an email from EEOC Enforcement Supervisor Unique Austin sending
Mr. Neiman a copy of Exhibit "G(16)" of June 21, 2024.

PHRA.  43 P.S.  §§951-963.

15. Plaintiff's Daughter, Allison Neiman is 12 years old and is in the 7th Grade, and son Lucas Neiman is 9 years old and in the 4th Grade.  They attend WASD schools but did not for several years due to the Order precluding their father from being on WASD property.

16. Plaintiff experienced a childhood trauma that caused him to suffer Post Traumatic Stress Disorder (PTSD), which qualifies as a disability under the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et seq.* and the Pennsylvania Human Relations Act (PHRA), 43 P.S. Labor §951 *et seq.*   He has documentation from a psychiatrist verifying his diagnosis and disability.  *See* Statement of Lysette Ramos, MD, of Dignity Counseling, LLC, attached hereto as Exhibit "H".  As a result of his disability, Mr. Neiman's physician stated in her report that Mr. Neiman cannot wear a face covering and should be exempt from doing so for medical reasons.  *Id.*

17. On information and belief,  in 2017, Mr. Neiman and Ms. Palmer decided to rent a house in West Reading for the express purpose of having their children attend schools in the Wyomissing Area School District.

18. In the beginning of 2021, the Neiman children were students at the Wyomissing Hills Elementary Center, located at 110 Woodland Rd., Wyomissing, Pennsylvania 19610.

19. Plaintiff has a constitutionally protected right to be involved in his children's education, under the Due Process Clause of the Fourteenth Amendment.

20. On August 9, 2021, WASD, through its Board of School Directors, enacted a policy it called the school mask "Action."  The School Board's mask "Action" provided that face coverings were required for students, employees, and visitors while inside all WASD Schools and while being transported in WASD vehicles.  This action also asserted that masks would be made available in WASD buildings, signs reinforcing the masking policy would be posted, and WASD would "continue to monitor new information/requirements issued by the Pennsylvania DOH. [Department of Health]"  A Copy of the WASD Action/Policy is attached hereto as Exhibit "I".  *See* pages 2 and 7.

21. On August 24, 2021, around 8:00AM, Klint Neiman went to the  Wyomissing Hills Elementary Center to speak with school staff about his children, who were both students at the school.

22. At this time, while outside the school, Mr. Neiman informed school Principal, Derenzo, that he had medical exemption letters for the mask requirement.  *See* Email from Mr. Neiman to Sheri Pivetau administrative assistant to Robert Scoboria, attached hereto as Exhibit "F".  *See also* Exhibit "H".

23. He was offered and declined a mask before leaving; Mr. Neiman explained he could not wear a mask for medical reasons.

24. (A)   On August 30, 2021, around 8:00 am, Mr. Neiman again went to the

Wyomissing Hills Elementary Center not wearing a mask.[3]  He visited the School to

drop off paperwork and pick up class assignments for his children,

(B)   Vice Principal, Dr. Robert Kucharczuk (also known as Dr. "K" and WASD

WASD Officer Brindley told Plaintiff to wait in the lobby, so they could get the

papers (children's school work) that Mr. Neiman went to the school to obtain.

25. At that time, Mr. Neiman was offered a mask and declined it. WASD school Officer

Brindley told Plaintiff that he was required to wear a mask.  Officer Brindley then

approached Mr. Neiman and told him that he needed to wear a face covering in

order to be in the building.

26. Mr. Neiman told Officer Brindley that he had a disability and was unable to wear a

face covering for medical reasons, and that, he had a note to this effect from his

doctor in the car which he offered to retrieve for Officer Brindley. Officer Brindley

declined Mr. Neiman's offer.[4]  S*ee* Exhibit "G(1)".

27. Officer Brindley told Mr. Neiman that he would need to wait in the lobby.

---

[3] .            On August 27, 2021, Amanda Palmer was told by Mrs. DiDonato, Lucas' teacher that Lucas
Neiman's school work would be available for pick up on August 30th.  Because Amanda Palmer was
injured and wearing a cast on her right leg, she was unable to drive.  Therefore, Mr. Neiman went to
the Wyomissing Hills Elementary Center to pick up the papers.

[4] . Mr. Neiman underwent a trial on August 18, 2022 arising from retaliatory criminal charges against
him for criminal trespass for allegedly being on WASD property in violation of a school directive.
During the trial, Officer Brindley admitted that Mr. Neiman told him he was exempt from having to
wear a mask and had documentation to establish his exemption.  *See*  trial testimony attached hereto as
Exhibit "G(1)," at pages 25-25.  *See also* Exhibit "H"

28. As Mr. Neiman walked into the school lobby, school Principal Derenzo, yelled to

   Mr. Neiman that he had to wait outside, if he was not wearing a mask.

29. Officer Brindley then told Mr. Neiman that he had contacted the Wyomissing

   police, and Mr. Neiman left the building.

   (A)   A Wyomissing Borough police officer arrived at the school and detained Mr.

   Neiman with no reasonable suspicion that he committed any crime.

   (B)   Mr. Neiman told the officer that he had a medical condition, which prohibited

   his ability to wear a mask but the school kicked him out for not wearing

   a mask.

   (C)   At this time a second Wyomissing Officer went into the school.

   (D)   Immediately, thereafter vice principal, Dr. Robert Kucharczuk (aka Dr. K),

         came out of the building and handed  Mr. Neiman a brown paper bag

         containing his child, Lucas' school papers.

   (E)   Mr. Neiman then turned to who he  believes, was Officer Moser, and  asked "I

         got what I came for …, am I free to go?"  Officer Moser responded, "No you

         are not free to go!"

   (F)   The other officer, after Mr. Neiman was detained for five minutes, then came

         out of the school building and met with Officer Moser.  After doing so,

         Officer Moser said to Mr. Neiman that he could leave.

   (G)   Mr. Neiman left at 8:30AM.

30. WASD's discriminatory actions were motivated by Plaintiff's disability, a protected class status, of which he had informed the School and WASD.

31. These events were summarized in part in a letter to Mr. Neiman dated September 1, 2021, from WASD Superintendent, Robert L. Scoboria, attached as Exhibit "J[5]" Mr. Scoboria's letter is replete with justification for its purpose of banning Plaintiff from WASD property based on his failure to wear a face mask. *Id.* Thus, Plaintiff was directed to stay off WASD property because he failed to wear a face mask and was banned from all WASD property solely for that reason. *Id.*

32. The September 1st letter stated further that, if Plaintiff entered any WASD school district property without the School District's prior written consent, he would be subject to arrest for defiant trespass. *Id.*

33. (A) Mr. Neiman subsequently asked the School if his son Lucas could attend football practice without a mask for medical reasons and if Plaintiff could enter WASD school property to attend his son's football games. *See* Email from Beth Delp, RN, CSN, Med, School Nurse Wyomissing Hills Elementary Center to school Principal Lisa DeRenzo, about a deleted voicemail message from Mr. Neiman, attached hereto as Exhibit "K".

(B) Ultimately, Lucas Neiman played football for a non-WASD team without wearing a mask despite playing on a WASD field.

---

[5] Mr. Scoboria's letter states that Plaintiff entered the School on August 24, 2021. This is not true; he never entered the School on that date.

(C)  Sometime later, Mr. Neiman telephoned a WASD District Office secretary to
ask if he could attend his son's WASD football events.

34. On September 17, 2021, WASD denied Mr. Neiman's request and told him that
he could view his son's football events from the public sidewalk.  *See* Email from
Sheri Piveteau on behalf of Jessica Lengle, dated September 17, 2021, which is
attached hereto as Exhibit "M".  Wyomissing Borough police were surveilling the
area during the one-hour practice, causing Mr. Neiman to feel intimidated.

35. Around this time Mr. Neiman and Ms. Palmer withdrew their children from their
WASD School and placed them into CCA (Commonwealth Charter Academy), an
online school.  They did so due to the School's public humiliation of Plaintiff and
his family, and in order to be more involved in their children's education[6].  The
Neimans were and continue to be damaged by these events.

36  As a result of this change, Ms. Palmer was forced to stop seeking work causing a
loss of income to her family.  She could not work because she needed to be at
home during her children's online schooling.  This damaged Plaintiff and his
family financially and emotionally.

---

[6] Plaintiff would have supplied a copy of the video if his Right to Know Request had not been denied.  He
will subpoena the WASD for the Video, if it still exists.  He will provide the Court copies of photographs
and videos representative of his humiliation.  *See* Neiman Right to Know request for video of August 30,
2022 incident, attached hereto as Exhibit "S".

37. WASD has signs posted on school playgrounds that school district residents have access to the playgrounds after school hours. *See* Notice attached hereto as Exhibit "L". Plaintiffs are and have been district residents at all time relevant hereto.

38. On the afternoon of Thursday December 9, 2021, Mr. Neiman, a Wyomissing School District resident, took his children to a Wyomissing School District playground, after school hours so they could play.

39.     Around 5:00 pm that day, Mr. Neiman and his children were confronted at the playground by West Reading Police Officer, Edward Delozier, who said "Klint,  Did you resolve your situation with the school?"  Mr. Neiman said "No." Officer Delozier said he had gotten a call complaining that Mr. Neiman was on the property and directed Mr. Neiman to go home.  Officer Delozier said he would call the WASD the following day to see if they wanted to press charges or not. *See* Delozier testimony, attached hereto as Exhibit "R".

40. On December 10, 2021, the next day,  the Pennsylvania Supreme Court decided in *Corman v. Acting Secretary of the Pennsylvania Department of Health,* 266 A.3d 432 (Pa. 2021 that mask mandates in schools were void *ab initio*.  Mr. Neiman and his wife Amanda Palmer were plaintiffs in that case. This fact was widely known given that a story concerning the case - including a picture of Plaintiff's house - was featured on the front page of the Reading Eagle. *See* Copy of  Front page of Reading Eagle dated December    , 2021, attached hereto as Exhibit "O".

41. While Officer Delozier knew of WASD's letter to Mr. Neiman, he also was aware of Mr. Neiman's medical condition which prevented him from wearing a mask.

42. Furthermore, the park at which Mr. Neiman was detained by the police is clearly marked that WASD residents were permitted use of the park during non-public school hours.   Mr. Neiman and his children were using the park during non-public school hours.   Mr. Neiman was detained around 5:01 PM and was present at the playground between 4:37pm and 5:01pm.   *See* Exhibit "G-3" at Page 3.

43. Approximately one-week later Mr. Neiman received papers in the mail advising him that he was being criminally charged with defiant trespass.   These charges required that Mr. Neiman to have a mugshot taken and to be finger printed, which was humiliating. *See* Arraignment, Waiver of Arraignment and Summary, which are attached hereto as Exhibits "E(1), (2) and (3)".

44. The charges resulted in several preliminary court proceedings, which forced Mr. Neiman to take time off from work and lose income on the day of each hearing.

45. On or about July 16, 2022, Mr. Neiman received a telephone call from his then Public Defender, Alex Amoroso, informing him that the Berks County District Attorney's Office had decided to drop the charges against him.   *See e.g.* Exhibit "G-7," at pages 2 and 3.

46. Mr. Neiman's case was scheduled for trial on Monday, July 18, 2022.   At the hearing on that date, Mr. Neiman anticipated that Assistant District Attorney Nicole Riccio, Esq. would notify the Court that the charges against him were

dismissed, based upon what his Public Defender told him.  Instead, Ms. Riccio,

advised the court that after a phone call from the Superintendent of WASD,

Robert Scoboria, the Berks County District Attorney's Office decided to press the

charges.  The Public Defender then reported to the Court that he was told

previously the charges would be dismissed.  *See* Exhibit "G-7" at page 2.  The

insistence of Superintendent Scoboria to the District Attorney to prosecute the

case against Mr. Neiman, despite the prosecutor's prior decision to cease

prosecution, constituted an act of retaliation against Mr. Neiman.[7]  *Id.* at pages 2

and 3.  Thereafter the case was set for trial on August 18, 2022.  *Id.* at page 11.

47. The case was tried on August 18, 2022 and following post-trial briefing, Mr.

Neiman was found Not Guilty.   The date of the verdict was September 22, 2022.

*See* Exhibit "G-4".

48. The criminal charges would not have occurred had Mr. Neiman been permitted to

present his evidence supporting his disability claim and exemption from wearing

a face mask.  *See* Exhibits "F", "G(1), (2) and (6)", and "H".

---

[7] This telephone call followed Mr. Scoboria's receipt, on July 16, 2022, of a telephone voicemail message from Mr. Yarnell, Mr. Neiman's attorney, informing him of Mr. Neiman's contentions.  Mr. Yarnell's voicemail message was followed on July 17, 2022 by a hand-delivered letter to Mr. Scoboria, in which Mr. Yarnell told the Superintendent that he was informed, as of that date that the Berks County District Attorney would be dropping the criminal charges against Mr. Neiman.  *See* Exhibit "G-5".  The timing of Mr. Scoboria's contact to the District Attorney occurred very shortly after following his receipt of Mr. Yarnell's letter.   This is direct evidence that the telephone call was an act of retaliation.

49. Klint Neiman and his spouse Amanda Palmer were petitioners in the case and

before the Pennsylvania Commonwealth Court and appeal captioned *Corman v.*

*Acting Secretary of the Pennsylvania Department of Health*, 267 A.3d 521, 2021

(Cmwlth. Ct. 2021). Exhibit "V"[8] Mr. Neiman has a medical condition, PTSD,

which excuses him from having to This decision was affirmed by the Pennsylvania Supreme

Court in *Corman v. Acting Secretary of the Pennsylvania Department of Education*, *supra*. Mr.

Neiman and Ms. Palmer were plaintiffs in that case. *See* Complaint, which is attached hereto as

Exhibit "V".

50. Officer Brindley testified at the criminal trial that Mr. Neiman told him that he could

not wear a mask due to a disability and that he had a medical exemption letter from

his doctor in his car. Thus, WASD was on notice of Mr. Neiman's medical

condition. Officer Brindley did nothing in response to Plaintiff's statement. *See*

Exhibit "G-1".

51. Shortly thereafter, by email to WASD Superintendent Scoboria, dated September 1,

2021, (the date of Mr. Scoboria's letter banning Mr. Neiman from WASD property.

*See* Exhibit "K"), Mr. Neiman wrote Mr. Scoboria the following in an email. *See*

Neiman Email dated September 1, 2022, attached hereto as Exhibit "F".

> Your School faculty discriminated [against] me when I went to pick up my
> children['s] school work and medical documentation [and] they did in fact ask
> me to wear a face mask but what you are forgetting to also reference is the

---

[8] .    This decision was affirmed by the Pennsylvania Supreme Court in *Corman v. Acting Secretary of the*
*Pennsylvania Department of Education*, *supra*. Mr. Neiman and Ms. Palmer were plaintiffs in that case.
*See* Complaint, which is attached hereto as Exhibit "V".

fact that I stated to the officer [referring to Officer Brindley on August 30, 2021, *see* Exhibit "G-1",] and to The Faculty that I have a medically exempt notice in my wallet and [that] I would be more than happy to show it to them. You're also forgetting that I have a video that I will get you'll see the officer and other faculty members dismissing any proof I have to offer and complete refusal of my civil rights.

*Id.* at page 2.

52. Accordingly, WASD and Defendants clearly were on notice, (*see* Exhibits "F", "G(1) and (2)"), that Mr. Neiman stated he had a legal justification not to wear a mask and, notwithstanding, failed or refused to consider this legal justification in its actions against Mr. Neiman.  Mr. Scoboria's September 1, 2021 letter, Exhibits "J", was an act of retaliation.

53. The Pennsylvania Department of Health's August 31, 2021 Order, Exhibit "N" at 4, it states as follows:

> Section 2:    General Masking Requirement
>
> Each teacher, child/student, staff, or visitor working, attending or visiting a school Entity shall wear a face covering indoors, regardless of vaccination status, except as set forth in Section 3.
>
> Section 3.    Exception to Covering Requirement
>
> The following are exceptions to the face covering requirements in Section 2.  All alternatives to a face covering, including the use of a face shield, should be exhausted before an individual is exempted from this Order.
> …
>
> B.  If wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability.

Section 4.    School Entity Obligations

A.    A School Entity must

> 1. Require and enforce the requirement with all teachers, children/students, staff and visitors (<u>subject to the exceptions in Section 3</u>) wear a face covering indoors, regardless of whether this Order is reflected in a school entity's Health and Safety Plan.

Exhibit "N" at pages 4 and 5. (Emphasis Added).

54. The record reveals that Mr. Neiman told Officer Brindley, AS Officer Brindley verified in trial testimony, Exhibit "G(1)", that he was exempt from wearing a mask due to a qualifying medical condition.   Mr. Neiman also informed of hid disability Principal Lisa Derenzo on August 30, 2021.[9]   Thereafter, Mr. Neiman sent Superintendent Scoboria an email, to which he never received a response. *See* Exhibit "F"  at page 2.

55. Plaintiff sent Scoboria the statement of Lysette Ramos, MD, psychiatrist, of Dignity Counseling, LLC, which provides as follows:


…                   **Dignity Counseling, LLC**
2209 Quarry Drive A-11, West Lawn, PA 19609
PHONE 484-719-5570 – FAX 717-884-7807
NPI 1336469642 License Number MD449145

_____

August 16, 2021

---

[9] .   At the time, he informed Principal Derenzo of his disability, he also told WASD Assistant Principal Dr. Robert Kucharczuk (aka Dr. K) of his disability.

Re:   Klint Neiman

DOB: 12/24/1989

To Whom it May Concern,

This letter confirms that Klint Neiman is exempt from a face covering.

Per the UPDATED ORDER OF THE SECRETARY OF PENNSYLVANIA
DEPARTMENT OF HEALTH REQUIRING UNIVERSAL FACE COVERINGS.

Section 3:  Exception to Covering Requirement:

B. If wearing a face covering would either cause a medical condition, or exacerbate
an existing one, including respiratory issues that impede breathing, a mental health
condition or a disability.

Individuals are not required to show documentation that an exception applies.

Thank you for your understanding and support of Klint.

Sincerely,

/s/Lysette Ramos, MD

Lysette Ramos, MD
MD449145

*See* Neiman Exhibit "H".

56.  Therefore, the evidence and the law make clear that WASD and Defendants were

aware of Mr. Neiman's contention that he had a medical condition, which

constituted a legal exception to the face covering requirement.  However, Mr.

Neiman was never permitted to present evidence or achieve through due process a

determination of his status as an exempt person under the law.  U.S.

Const. amend. XIV, § 2.

57. This exception did not even require that Plaintiff have medical documentation on his person, though he obviously did.   The retaliatory failure by WASD and Defendants to consider his exception not only deprived Mr. Neiman of rights to which he was entitled as an exempt person to present his case, it also cost him his liberty because, he would have had liberty to enter and remain on WASD property and be involved in each of his children's education had his exemption been considered. *Id.*

58. Section 4 of the "Order of the Acting Secretary of the Pennsylvania Department of Health  Directing Face Coverings in School Entities" provides in relevant part:

(a)

  A. A School Entity [including WASD] must
  1. Require and enforce the requirement with all teachers, children/students, staff and visitors (subject to the exceptions in Section 3) wear a face covering indoors, regardless of whether this Order is reflected in a school entity's Health and Safety Plan.

Exhibit "N," at page 4 and 5.

(b) "Section 3:  Exceptions to Covering Requirement"  provides in relevant part:

  The following are exceptions to the face covering requirements in Section 2. All  Alternatives to a face covering, including the use of a face shield, should be exhausted before an individual is excepted from this Order. …

  B. If wearing a face covering would either cause a medical      condition, or exacerbate an existing one, including respiratory issue that impede breathing, a mental health condition or a disability.

    (c)    Mr. Neiman has a mental health disability,  Post Traumatic Stress Disorder (PTSD), had notified defendant of this fact and was never permitted through some procedure to present his claim to the need for an accommodation.

    (d)    Mr. Neiman was entitled to this accommodation by this Order, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act.

59. WASD and defendants never complied with their legal obligations in this instance. If they had, this case would never have occurred. Based on his evidence, Plaintiff would have had an exclusion from wearing a face mask.  However, we will never know because WASD and Defendants never gave Mr. Neiman that opportunity.

60. On or about, June 14, 2022, WASD without any notification to Mr. Neiman, withdrew its "Action" requiring students, teachers, employees and visitors to wear masks.

61. Thereafter on September 28, 2022, Mr. Neiman was notified that he was found Not Guilty of any criminal charges.  *See* Exhibit "G-4".

62. On or about, September 28, 2022, Mr. Yarnell telephoned WASD attorney Jeffrey D. Litts, Esq. of Kegel, Klein, Litts & Lord, to inform him of the fact that Mr. Neiman was found "Not Guilty" in the criminal proceedings and to request WASD's position on the return of the Neiman children to WASD schools <u>and</u> the ability of their parents to be actively involved in their education.  Mr. Litts said that Mr. Neiman would need to be congenial at school and withdraw his PHRC case, if he was to be permitted to be on WASD property.

63. Later that same day, Mr. Litts sent Mr. Yarnell the following email:

    Mr. Yarnell –

This email follows up our telephone call earlier this afternoon in which you advised Mr. Neiman was found not guilty on the criminal trespass charge for entering upon school district property.

Per our discussion, I wanted to memorialize what I shared with you for purposes of you speaking with your client:

- **May Mr. Neiman re-enroll his children as students in the District's public schools?** Yes, he can assuming he and his family reside within the district. I previously explained that your client has always had that right in my July 19th email to you, which is attached below. Moreover, the District sent your client a letter explaining that fact and advising him who he should contact if he wanted to re-enroll his children.

- **Will the District rescind its no trespass letter given to Mr. Neiman?** That is certainly something the District is prepared to discuss. The District would likely be inclined to do rescind that letter if your client agreed to refrain from engaging in the type of behavior that lead [*sic* should be led] to its issuance. If Mr. Neiman is willing to treat school personnel in a reasonable civil manner, I think we can definitely discuss rescinding the letter.

- **Status of Mr. Neiman's PHRC complaint.** In the fall of 2021, [y]our client filed a complaint against the District with the PHRC. That complaint alleges the District discriminated against him on the basis of disability at the beginning of the 2021-2022 school year by prohibiting him from entering a school building without a mask. His purported disability as alleged in his complaint is PTSD. Your client filed this compliant [*sic* should be complaint] over a year ago, and the COVID-19 mitigation measure he did not like (i.e. [,] masking) is no longer in effect – so I [am] wondering if he still wishes to continue pursue this complaint or not. Because if he agreed to withdraw it, I think the District could agree to withdraw its no trespass letter that you asked about.

I understand that you will be talking to your client about these matters, and will be in touch. I look forward to hearing from you.

*Jeffrey D. Litts, Esquire*
*(717) 392-1100 phone*
*(717) 392-4385 fax*

*See* Jeffrey D. Litts, Esq. September 28, 2022 Email, which is attached hereto as Exhibit "G-8".

64. At no time was Mr. Neiman intentionally disruptive or unprofessional to any school administrators or staff, though he did respond in kind to unprofessional behavior by Principal Derenzo and Officer Brindley, when they screamed at him to go outside.[10]

65. WASD has outrageously required Mr. Neiman to accept the *quid pro quo* of withdrawing his PHRC proceedings alleging disability discrimination by WASD, before he is permitted back on WASD property.   The failure to permit Mr. Neiman to be on WASD property and participate in his children's education -- especially after WASD withdrew its "Action" requiring masks -- constitutes retaliation and interference with Plaintiff's legal rights.

66. Mr. Neiman has suffered damages as a result of the discrimination against him by WASD and Defendants.   He lost income and suffered severe emotional distress. In addition, due to the discrimination he experienced, his children have been damaged by their loss of education and social skills learning through the in-person, conventional learning program at WASD.

---

[10] . WASD received over $3,000,000.00 in funding related to the COVID crisis.  Mr. Neiman contends that WASD refused, at least in part, to accommodate him in his qualification to be mask free, because it believed by doing so it would acknowledge its failure to comply with PHRA and ADA requirements in providing reasonable accommodations to people with disabilities on their WASD property, a reasonable accommodation.

67. PHRC processed the charges of discrimination originally filed *pro se* by Mr. Neiman against WASD, which were later amended in which he through his attorney requested that the charges be cross filed with the Equal Employment Opportunity Commission so that these proceedings would also be considered under the Americans with Disabilities Act provisions involving public accommodations 42 U.S.C., §12101 *et seq.* (hereinafter ADA), and the Americans with Disabilities Amendments Act, 42 U.S.C. §12101 *et seq.* (hereinafter ADAAA). *See* Exhibit "A" and "B".

68. The PHRC concluded its processing of the charges of discrimination in the Amended Complaint without cross-filing the charges as requested by Plaintiff and issued a decision of no probable cause. *See* Exhibit "C".

69. As stated above the PHRC concluded it proceedings finding no probable cause for discrimination. *Id.*

70. After the no probable cause determination, Mr. Neiman applied for multiple positions with WASD for which he was qualified.

71. After the dismissal of Mr. Neiman's PHRC claims he twice applied for a position with the WASD as a janitor and once applied for a position as a cafeteria aid. He is fully qualified to perform the essential duties of these jobs, though he may need a reasonable accommodation.

72. Mr. Neiman received no response to these applications other than to ask that he obtain an updated criminal background check, which Mr. Neiman successfully obtained. WASD admitted to its receipt of the necessary documents.

73. Thereafter, Mr. Neiman on multiple occasions inquired by telephone and/or email as to the status of his applications.

74. By letter dated January 26, 2024, which Mr. Neiman received in later January 2024 on/or about January 29, 2004, Mr. Neiman was informed that WASD would no longer respond to his inquiry regarding his applications for employment with WASD.

75. The refusal to communicate with Mr. Neiman and refusal to hire Mr. Neiman was in retaliation for his filing charges of discrimination with the PHRC. *See* Letters. which are attached hereto as Exhibits  "A" and "G(13)**.**

76. Mr. Neiman alleges that the retaliatory acts against him constitute retaliation under the ADA, 42 U.S.C.. §12101 *et seq* (hereinafter ADA), and the Americans with Disabilities Amendments Act. 42 U.S.C. §12101 *et seq* (hereinafter ADAAA), as well as the PHRA. 43 P.S. §§951-963

77. Mr. Neiman further alleges that WASD Superintendent Robert Scoboria aided and abetted WASD's acts of discrimination. Allegations in support of  these contentions include but are not limited to, Mr. Scoboria's insistence that criminal charges to be prosecuted against Mr. Neiman. *See* Amended Charges of Discrimination (Exhibit "B" and Exhibit "E(3)".

78. Plaintiff filed charges of discrimination with the EEOC as a result of these acts of discrimination. *See* Exhibit "G(14)"

## COUNT I

## KLINT NEIMAN  V. DEFENDANT WASD

**Discrimination and Retaliation under the ADA, 42 U.S.C. §12101 *et seq* (hereinafter ADA), and the Americans with Disabilities Amendments Act, 42 U.S.C. §12101 *et seq* (hereinafter ADAAA).**

79. Paragraphs 1 through 78 of this Complaint are incorporated by reference as if set forth fully herein.

80. Plaintiff is a disabled person.   Plaintiff repeatedly offered to provide Defendant proof of his disability.   *See* Exhibits "A" "B", "D", "G(1) and (2)", "G(5)", "G(8), "G(9)" and Exhibits "G(11)", "H".

81. Mr. Neiman has two school aged children who attended schools in the Wyomissing Area School District.  In an effort to get his children to school and to participate in their educational experience Mr. Neiman experienced a discriminatory environment based upon disability at his children's school and School District.

82. (A)   Mr. Neiman reported these hostile events to WASD but was denied the opportunity to present proof of his disability by the WASD and to engage in a process to effect his rights as a disabled person.

(B)  Mr. Neiman reported these hostile events to WASD but

was prevented from providing proof of his disability by police officers of the Wyomissing and West Reading Police Departments acting as its agents, and engaging in a process to effect his rights as a disabled person.

83. The disability hostile events resulted in Mr. Neiman being ordered to leave WASD school property and his subsequent unconstitutional detention by the Wyomissing Police and later by the West Reading Police despite Mr. Neiman's explanation to the police of his disability.

    (A)    Mr. Neiman was never permitted to exercise any legal procedural process through which he could have asserted and proved his legal right to an accommodation.   These actions violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

84. When Mr. Neiman explained his disability and rights he was detained by the police, preventing him from speaking with school officials about his disability and rights.  These actions violated his right to seek a reasonable accommodation and his constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

85. These actions constituted an unlawful violation of Plaintiff's right to freedom from discrimination under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

86. The determination to restrict and ultimately terminate Plaintiff's rights was made by persons who are policy makers of Defendant WASD.

87. Plaintiff suffered damages in the loss of employment, injury to his reputation, and the emotional pain and suffering caused by Defendant's actions.

88. Plaintiff filed charges of discrimination including civil rights claims which were denied.

WHEREFORE, Plaintiff, Klint Neiman, requests a judgment be entered in his favor for damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) against defendant, including, but not limited to lost wages, damage to his reputation, severe emotional and physical distress, plus interest, as well as attorneys' fees and costs and such other relief as the Court deems appropriate.

## COUNT II

## KLINT NEIMAN V.   DEFENDANT WASD

### Discrimination and Retaliation under the
### Pennsylvania Human Relations Act (PHRA)

89. Paragraphs 1 through 88 of this Complaint are incorporated by reference as if set forth fully herein.

90. Plaintiff is a disabled person.   Plaintiff repeatedly offered to Defendant his proof of disability.   *See* Exhibits referred to in Paragraph 80 above.

91. Mr. Neiman has two school aged children who attended schools in the Wyomissing Area School District.  In an effort to get his children to school and to participate in their educational experience Mr. Neiman experienced a

discriminatory environment based upon disability at his children's school and School District.

92. (A)     Mr. Neiman reported these hostile events to WASD but was denied the opportunity to present proof of his disability by the WASD and engage in a process to effect his rights as a disabled person.

(B)  Mr. Neiman reported these hostile events to WASD but was prevented from providing proof of his disability by police officers of the Wyomissing and West Reading Police Departments acting as its agents, and engaging in a process to effect his rights as a disabled person.

93. The disability hostile events resulted in Mr. Neiman being ordered to leave WASD school property and his subsequent unconstitutional detention by the Wyomissing Police and later by the West Reading Police despite Mr. Neiman's explanation to the police of his disability.

(A)      Mr. Neiman was never permitted to exercise any processes constituent with the United States Constitution.

94. When Mr. Neiman explained his disability and rights he was detained by the police, preventing him from speaking with school officials about his  disability and rights.  These actions violated his right to seek a reasonable accommodation and his constitutional rights under the First and Fourteenth Amendments to the United States Constitution.

95. These actions constituted an unlawful violation of Plaintiff's right to freedom from discrimination under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

96. The determination to restrict and ultimately terminate Plaintiff's rights was made by persons who are policy makers of Defendant WASD.

97. Plaintiff suffered damages in the loss of employment, injury to his   reputation, and the emotional pain and suffering caused by Defendant's actions.

98. Plaintiff filed charges of discrimination including civil rights claims which were denied.   *See* Exhibits referred to in Paragraph 80 above.

   **WHEREFORE**, Plaintiff, Klint Neiman, requests a judgment be entered in his favor for damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) against defendant, including, but not limited to lost wages, damage to his reputation, severe emotional and physical distress, plus interest, as well as attorneys' fees and costs and such other relief as the Court deems appropriate.

## COUNT III

### KLINT NEIMAN V.  DEFENDANT WASD

### VIOLATION OF DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION IN VIOLATION OF 42 U.S.C. §1983

99. Paragraphs 1 through 98 of this Complaint are incorporated by reference as if set forth fully herein.

100. The Constitution prohibits government from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause protects against governmental interference with certain fundamental rights and liberty interests.

101. The interests of parents "to direct the upbringing and education of children under their control" is one of the oldest such rights and liberty interests recognized by the Supreme Court. *See Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), *quoting Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925).

102. Plaintiff has a constitutional right as a parent to be actively involved in and a decision maker regarding his minor children's education.  Despite notifying Defendant and its agents multiple times of his disability, Plaintiff was repeatedly denied any process under which he could present his claim to a disability and necessary request for accommodation.

103. In denying his Constitutional right of due process, Defendant engaged in a pattern of disability-based discrimination and retaliation against Plaintiff. Specifically, as a direct result of Defendant's conduct Plaintiff was: ordered to leave his children's School; forbidden from entering the School and all WASD property; unconstitutionally detained by Wyomissing and West Reading Police

officers acting as WASD agents, despite explaining and offering to provide proof of his disability; subjected to criminal prosecution for Willful Trespassing; and denied numerous WASD job opportunities for which he was qualified.

**WHEREFORE**, Plaintiff requests that judgment be entered in his favor for damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) against defendants pursuant to 42 U.S.C. §1983, including, but not limited to loss of familial income, wages, damage to his reputation, severe emotional and physical distress, plus applicable interest, as well as attorneys' fees and costs and such other relief as the Court deems appropriate.

## COUNT IV

**KLINT NEIMAN, on behalf of himself and his minor children,
v. DEFENDANT WASD**

**DIRECT AND ASSOCIATIONAL DISCRIMINATION IN VIOLATION OF THE
REHABILITATION ACT,
<u>29 U.S.C. § 794(a).</u>**

104. Paragraphs 1 through 103 of this Complaint are incorporated by reference as though set forth at length herein.

105. Plaintiff is a disabled person who suffers from Post Traumatic Stress Disorder ("PTSD"). Plaintiff's disability prevented him from complying with his Defendant's mask mandate for medical reasons. He repeatedly offered Defendant proof of his disability, which was refused and/or disregarded.

Defendant also failed and/or refused to engage in any interactive process to accommodate Plaintiff.

106. Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination," with respect to "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

107. Upon information and belief, Defendant WASD receives federal funding for its educational programs and related activities.

108. Defendant engaged in a pattern of discrimination and retaliation against Plaintiff based solely upon his disability.  Specifically, as a direct result of Defendant's conduct, Plaintiff was: ordered to leave his children's School; forbidden from entering the School and all WASD property; unconstitutionally detained by Wyomissing and West Reading Police officers acting as WASD agents, despite explaining and offering to provide proof of his disability; subjected to criminal prosecution for Willful Trespassing; and denied numerous WASD job opportunities for which he was qualified.

109. As a result of Defendant's actions, Plaintiff was denied the right to attend and participate in his children's education as well as school and sports events, as well as the right to enter and use WASD property and facilities outside of school hours, in violation of Section 504 of the Rehabilitation Act.

110. Plaintiff's minor children, who attended school in the WASD, were subject to associational discrimination in violation of the Rehabilitation Act.  See 42 U.S.C. § 12112(b)(4).

111. Specifically, due to Defendant's actions, Plaintiff's children were deprived of their father's attendance at and participation in their education, including school functions and events, and ultimately forced to transfer to online schooling as a result of Defendant's actions against Plaintiff and their association with him.  This deprived Plaintiff's children of in-person schooling and interaction with their peers critical to their educational learning and social development.

112. Plaintiff's children were also denied the right to use WASD playgrounds and other facilities under Plaintiff's supervision after school hours as a result of their association with Plaintiff and Defendant's discriminatory and retaliatory actions against him.

113. Plaintiff suffered damages in the loss of his spouse's employment, retaliatory denial of his own employment opportunities, injury to his reputation, and tremendous emotional pain and suffering.

114. Plaintiff's minor children were likewise damaged by Defendant's actions based upon their association with Plaintiff, suffering from the absence of their father's participation in their education and school events, their inability to use WASD playgrounds and other facilities after school hours, injuries to their

reputations by association, and the loss of in-person education and social interaction with their peers.

**WHEREFORE**, Plaintiff, on his own and on behalf of his minor children, requests that judgment be entered in his favor for damages in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) against defendants pursuant to 42 U.S.C. §1983, including, but not limited to loss of familial income, wages, damage to his and his children's reputations, severe emotional and physical distress, plus interest, as well as attorneys' fees and costs and such other relief as the Court deems appropriate.

## COUNT V

## KLINT NEIMAN V. ROBERT SCOBORIA

## AIDING AND ABETTING DISCRIMINATION UNDER
## 43 PA. S. §955(e)

115.    Paragraphs 1 through 114 of this Complaint are incorporated by reference as if set forth fully herein.

116.    The PHRA provides in relevant part: "It shall be an unlawful discriminatory practice . . . (e) for any person . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."  43 PA. C.S. §955(e)

117.    Plaintiff is a disabled person who repeatedly offered to provide Defendant WASD proof of his disability.

118.    At the time of all relevant events herein, Defendant Robert Scoboria was employed as the Superintendent of Defendant WASD.

119.    Plaintiff was discriminated against by WASD through the aiding and abetting of Defendant Robert Scoboria, who in his capacity as Superintendent insisted upon the prosecution of Plaintiff for Willful Trespass on WASD property in the face of a plea deal agreed upon by the Berks County District Attorney's Office and Plaintiff's counsel.

120.    Defendant Scoboria further aided and abetted discrimination against Plaintiff in violation of his legal rights, by conditioning WASD's rescinding of its edict barring Plaintiff from entering and using WASD property and facilities on the withdrawal of Plaintiff's administrative claims against WASD, despite Plaintiff's being found "not guilty" following a criminal trial for Willful Trespassing.

121.    Upon information and belief, Defendant Scoboria also directed that Plaintiff's applications for WASD jobs be disregarded or denied and that Plaintiff's follow-up inquiries be ignored.

122.    Plaintiff was injured due to the actions of Defendant Scoboria.

123.    Plaintiff suffered damages in the loss of employment and injury to his

reputation, and the emotional pain and suffering caused by Defendants'

actions.

**WHEREFORE**, Plaintiff, requests a judgment be entered in his favor for

damages in an amount in excess of One Hundred Fifty Thousand Dollars

($150,000.00) against defendants pursuant to 43 Pa. S. §955(e), including, but not

limited to loss of familial income, wages, damage to his reputation, severe emotional

and physical distress, plus applicable interest, as well as attorneys' fees and costs and

such other relief as the Court deems appropriate.


Dated: August 5, 2024                By:/s/Stephen V. Yarnell
                                     Stephen  V.  Yarnell
                                     PA  Id.  No.:  33360
                                     110 l Evergreen Rd.
                                     Reading, PA 19611
                                     (610) 664-7883
                                     (610) 664-7884 (fax)
                                     steve@yarnellemploymentlaw.com

                                             and

                                     /s/Brian P.  Kirby
                                     Brian P. Kirby
                                     PA Id. No.: 56345
                                     171 W. Lancaster Ave., Ste. 100
                                     Paoli, PA 19301
                                     (610) 578-9050;
                                     (215) 880-6026 (cell)
                                     (610) 578-9049 (fax)
                                     bpkirbyesq@verizon.net